## UNITED STATES DISTRICT COURT

## DISTRICT OF MINNESOTA

RONNIE JEROME JACKSON, III,

Civil No. 16-2405 (JRT/BRT)

Plaintiff,

v.

KATHY REID and KATHERINE
POWERS-JOHNSON, *individually*, and
TOM ROY, *in his official capacity*,

**MEMORANDUM OPINION
AND ORDER ADOPTING REPORT
AND RECOMMENDATION**

Defendants.

Ronnie Jerome Jackson, III, No. #239471, Minnesota Correctional Facility – Oak Park Heights, 5329 Osgood Avenue North, Stillwater, MN 55082, *pro se* plaintiff.

Lindsay LaVoie, **OFFICE OF THE MINNESOTA ATTORNEY GENERAL**, 445 Minnesota Street, Suite 1800, Saint Paul, MN  55101, for defendants.

Plaintiff Ronnie Jackson brought this 42 U.S.C. § 1983 action against Kathy Reid,[1] the Health Services Administrator at Minnesota Correctional Facility – Oak Park Heights ("MCF-OPH"), in her individual capacity; Katherine Powers-Johnson, a nurse at MCF-OPH, in her individual capacity; and Tim Roy, Commissioner of Corrections for the Minnesota Department of Corrections ("DOC"), in his official capacity (collectively, "Defendants").  Jackson alleges that Defendants were deliberately indifferent to his

---

[1] Jackson's filings name Kathy Ried; however, Defendants' filings – including Reid's affidavit – list her surname as Reid. (*See, e.g.*, Aff. of Kathryn Reid ("Reid Aff."), June 14, 2017, Docket No. 49.)

serious medical needs in violation of his Eighth Amendment right to be free from cruel and unusual punishment.   Presently before the Court is a report and recommendation ("R&R") issued by Magistrate Judge Thorson on Defendants' Motion for Summary Judgment and Jackson's Objections to the R&R.   Because the Court finds that Defendants' conduct did not constitute deliberate indifference, the Court will overrule Jackson's objections and adopt the Magistrate Judge's R&R.

## BACKGROUND

Jackson is a prisoner detained at MCF-OPH.   (Am Compl. ¶ 1, Sept. 27, 2016, Docket No. 13.)   He alleges that Defendants were deliberately indifferent to his serious medical needs in two ways: (1) Powers-Johnson refused to provide him with Zoloft, an antidepressant medication that he was prescribed, on April 9 and 23, 2016; and (2) Powers-Johnson failed to perform wellness checks for his shoulder injury on several days while Jackson was in administrative segregation and falsely reported that he did not have any medical issues on those dates.   (*Id.* ¶¶ 1-2, 17.)   He alleges that he informed Reid of Powers-Johnson's refusal to provide adequate medical care, but Reid denied any wrongdoing on the part of medical staff.   (*Id.* ¶ 1.)

## I.      FACTUAL BACKGROUND

### A.      Refusal to Provide Jackson with Zoloft

Jackson has been diagnosed with depressive and anxiety disorders and has been prescribed Zoloft to treat these disorders.   (Aff. of Dr. David Paulson ("Paulson Aff.") ¶¶

9-10, June 14, 2017, Docket No. 38; *see also* Am. Compl. ¶ 1.)   Zoloft is an antidepressant medication that is used to treat various mental health conditions.  (Paulson Aff. ¶ 11.)   According to Dr. David Paulson, the Medical Director for the Minnesota DOC, Zoloft has a half-life of over 24 hours, which is "the period of time required for the concentration or amount of the drug in the body to be reduced by one-half."  (*Id.* ¶¶ 1, 12.)  It also has a slow onset of action, which is "the length of time it takes for a drug's effects to come to prominence upon administration."  (*Id.* ¶ 13.)  Paulson opines that "[i]f Zoloft is held or stopped the decrease in effectiveness declines slowly," meaning that "[m]issing a single dose has little effect."  (*Id.*)

### 1.    Jackson's Allegations

Jackson alleges that he went to visitation to see family at approximately 11:38 a.m. on April 9, 2016, for a one-hour visit.[2]  (Am. Compl. ¶ 10.)  Before going, Jackson asked his unit staff to call medical to have his noon dosage of Zoloft brought to him and was told it would be brought to him "later."  (*Id.*)  After returning from the visit, Jackson again requested his Zoloft and was told someone would bring it to him at 4:00 p.m.  (*Id.*)  Jackson alleges that he never received his Zoloft on April 9, and that "Powers-Johnson falsifie[d] his medical record alleging [that he] 'refused' and was 'non-compliant.'"  (*Id.*)  He does not allege suffering any symptoms or complaining of symptoms on April 9.

---

[2] Jackson alleges that the visit was initially scheduled for 9:00 a.m., but the family was asked to reschedule due to multiple Incident Command Systems that morning.  (Am. Compl. ¶ 10.)  Because his mother had traveled from Atlanta, Georgia, to visit him, they were unable to reschedule for a different day, so his family came back later that day.  (*Id.*)

Jackson also alleges that he was called for visitation around 11:39 a.m. on April 23, 2016, "which came as a surprise to him." (*Id.* ¶ 12.) Again he asked for his noon dosage of Zoloft before he left and was told he would receive it after the visit. (*Id.*) During the visit, Jackson learned of the death of his uncle, who Jackson considered a father figure, and realized that he would be unable to attend the funeral. (*Id.*) Upon returning from the visit, Jackson requested his Zoloft but was told that Powers-Johnson was not going to change her schedule just to bring him his medication. (*Id.*) She again "falsifie[d] his medical record saying he was a 'no show.'" (*Id.* ¶ 13.) That night, Jackson alleges that he suffered from "extreme depression and anxiety, well beyond the norm for him, to the point of suicide, as well as severe upset stomach, nausea, and heavy perspiration" as a result of his depression and missed dosage of Zoloft. (*Id.* ¶ 12.)

### 2. Defendants' Response

Reid confirms that Jackson's medical records show that he "refused" his Zoloft on April 9 and that he was a "no-show" on April 23. (Aff. of Kathryn Reid ("Reid Aff.") ¶ 6, June 14, 2017, Docket No. 49.)[3] She alleges that Jackson also "refused" Zoloft on several other dates. (*Id.*) According to redacted MCF-OPH visiting logs, Jackson did not have a visitor on April 9 but had a visitor on April 23. (*Id.* ¶ 7, Ex. B & C.) Reid states that an inmate can "work with staff" to reschedule delivery of medication when he or she

---

[3] "Refusal" indicates that the person did not take his or her medication as prescribed; "no-show" indicates that the person is not in his or her cell to receive the medication. (Reid Aff. ¶ 6.)

has a visitor, but Jackson did not do so on April 23.  (Reid Aff. ¶ 6.)  She also notes that only prescribing physicians, not unit staff, can change prescription times.  (*Id*. ¶ 8.)

Paulson also notes that Jackson did not take his Zoloft consistently before April 9 or after April 23, 2016.  (Paulson Aff. ¶ 15.)  He opines that, due to Zoloft's long half-life, the symptoms that Jackson experienced on April 23 were not withdrawal symptoms from Zoloft because the medicine still would have been present in his system.  (*Id*. ¶ 14.)  Furthermore, Jackson did not request a sick call on April 23 or on the following days, nor did he press the duress button in his cell.  (*Id*. ¶ 17; Reid Aff. ¶ 8.)  Paulson also opines that the symptoms Jackson suffered on April 23 were more likely brought on by grief due to loss of his family member rather than missing his medication given that Jackson had missed his medications in the past and never noted such symptoms.  (Paulson Aff. ¶ 18.)

## B.     Failure to Perform Wellness Checks

Jackson also alleges that Powers-Johnson failed to perform wellness checks on him on May 21-23 and June 1, 2016, while he was in administrative segregation.  (Am. Compl. ¶ 17.)[4]  Jackson was in "terrible pain" from a shoulder injury and in need of pain medication.  (*Id.*)  He alleges that Powers-Johnson "documented falsely" that she had performed such checks and that he "had 'no medical issues.'"  (*Id*. ¶¶ 1, 17.)  Jackson states that, had he been provided a wellness check on the relevant dates, he would have

---

[4] Jackson's allegations regarding wellness checks are slightly inconsistent as to dates, but the maximum alleged date range is May 21-23 and June 1, 2016.  (*See* Compl. at 4; Am. Compl. at 1, 2, 4, and 9.)

been able to receive his pain medication in a timely matter, "thus preventing numerous days of unbearable pain." (*Id*. at 10.)

Reid notes that nurses conduct wellness checks only on people in segregation to ensure that they have "direct and timely access to healthcare." (Reid Aff. ¶ 10.) Records indicate that a nurse performed a wellness check on Jackson on May 21-23 and June 1, 2016. (*Id*. ¶ 10, Exs. G-J.) Reid alleges that Powers-Johnson saw Jackson on May 23, 2016, for his shoulder pain. (*Id*. ¶ 10.) Paulson notes that Jackson was prescribed Indocin for his shoulder pain, which is a "keep on your person" drug, and that "it appears that Jackson had his anti-inflammatory medications with him in his cell." (Paulson Aff. ¶ 20.) Jackson saw the treating physician on May 25, 2016, and said that he had been taking Indocin as prescribed. (*Id*.) However, records from that date note that Jackson reported "no improvement in his shoulder pain" and reported that "his pain ha[d] worsened somewhat" because he "no longer has access to the ice or the Thera-Bands" he used in general population. (*Id*. ¶ 20, Ex. H at 3.) He also reported that he was having pain in both shoulders because he had to "change the fashion in which he sleeps." (*Id*.) The treating physician discontinued treatment with Indocin and prescribed a different medication to treat the pain. (*Id*. at 4.) Records indicate that Jackson was also seen on June 1, 2016. (*Id*. at 5.)

## C.    Exhaustion of Administrative Remedies

Jackson alleges that he wrote Defendant Reid to inform her of Powers-Johnson's refusal to give him medication, but her responses denied any wrongdoing, stating instead

that medications could be given within 30 minutes of their prescribed time.  (Am. Compl.

¶ 14.)   He then attempted to file a medical grievance, but it was returned with a note

saying that Reid was out of the office.  (*Id*. ¶¶ 15-16.)  He later resubmitted the grievance

as instructed and additionally filed a complaint with the Minnesota Board of Nursing

against Powers-Johnson.  (*Id*. ¶ 18.)  He alleges that Reid returned his medical grievance

without providing him with the correct institutional response papers, "effectively barring

Mr. Jackson from appealing any denial of his medical grievance."  (*Id*. ¶ 19.)   He

attempted to appeal the denied grievance to the DOC Central Office, but it was returned

to him because he did not submit the institutional response, even though he alleges he had

submitted the response that was given to him.  (*Id*. ¶ 20.)

## II.   PROCEDURAL BACKGROUND

Jackson filed this 42 U.S.C. § 1983 action on July 13, 2016.  (Compl. at 1.)  He

later filed an amended complaint.  (Am. Compl.)  Defendants moved for summary

judgment on June 14, 2017, (Defs.'s Mot. Summ. J., June 14, 2017, Docket No. 34.),

which Jackson opposed, (Pl.'s Opp., July 10, 2017, Docket No. 58.).  In his Opposition,

Jackson indicated that Defendant Roy should be voluntarily dismissed from the action.

(*Id.* at 8.)  The Magistrate Judge issued an R&R recommending that summary judgment

be granted and all parties be dismissed.  (R&R, Nov. 7, 2017, Docket No. 71.)  Thirteen

days later, Jackson filed objections to the R&R.  (Objs., Nov. 20, 2017, Docket No. 72.)

# DISCUSSION

## I.   STANDARD OF REVIEW

Upon the filing of an R&R by a magistrate judge, "a party may serve and file specific written objections to the proposed findings and recommendations."  Fed. R. Civ. P. 72(b)(2); *accord* D. Minn. LR 72.2(b)(1).  "The district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to."  Fed. R. Civ. P. 72(b)(3); *accord* D. Minn. LR 72.2(b)(3).  "The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions."  Fed. R. Civ. P. 72(b)(3); *accord* D. Minn. LR 72.2(b)(3).  Here, Jackson specifically objected to the Magistrate Judge's findings that Powers-Johnson and Reid be granted summary judgment on his claim that their refusal to provide Zoloft constituted deliberate indifference.  (Objs. at 1-3.)  The Court will thus review those findings *de novo*.  Jackson does not object to the Magistrate Judge's findings with respect to Defendants' alleged failure to perform wellness checks or with respect to Defendant Roy; thus, the Court will not review those findings.

## II.   EIGHTH AMENDMENT: DELIBERATE INDIFFERENCE

"The Eighth Amendment, which applies to the States through the Due Process Clause of the Fourteenth Amendment, prohibits the infliction of 'cruel and unusual punishments' on those convicted of crimes."  *Wilson v. Seiter*, 501 U.S. 294, 296-97 (1991) (citation omitted).  In *Estelle v. Gamble*, the Supreme Court recognized that "[a]n inmate must rely on prison authorities to treat his medical needs."  429 U.S. 97, 103

(1976).  Because of this reliance, the Supreme Court held that "deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' proscribed by the Eight Amendment."  *Id.* at 104 (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976)).

To show deliberate indifference, Jackson must prove two components, one objective and one subjective.  *See Gordon ex rel. Gordon v. Frank,* 454 F.3d 858, 862 (8th Cir. 2006); *see also Wilson*, 501 U.S. at 296-98.  As to the objective requirement, Jackson must show that he had a "serious medical need."  *See Gordon*, 454 F.3d at 862 (citing *Crow v. Montgomery*, 403 F.3d 598, 602 (8th Cir. 2005)).  As to the subjective component, Jackson must show that prison officials knew of his need but "deliberately disregarded it."  *Id*.  The subjective component requires "a mental state akin to criminal recklessness."  *Id.* (citing *Olson v. Bloomberg*, 339 F.3d 730, 736 (8th Cir. 2003)).

Because the present R&R reviews a motion for summary judgment, the Court considers the facts in the light most favorable to Jackson, the nonmoving party.  *Id*. at 861 (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 324 (1986)).  Summary judgment is appropriate when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); *see also Gordon*, 454 F.3d at 861.  A fact is material if it might affect the outcome of the lawsuit, and a dispute is genuine if the evidence is such that it could lead a reasonable jury to return a verdict for either party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

### A.    Objective Component: Serious Medical Need

"A serious medical need is one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Holden v. Hirner*, 663 F.3d 336, 342 (8th Cir. 2011) (quoting *Coleman v. Rahija,* 114 F.3d 778, 784 (8th Cir. 1997)) (internal quotation marks omitted).  The Magistrate Judge properly found that, taking the facts in the light most favorable to Jackson, there is at least a genuine issue of material fact as to whether he had a "serious medical need."  (R&R at 8.)  The parties agree that Jackson was diagnosed with mental health disorders and was prescribed Zoloft to treat them.  As such, Jackson has satisfied the objective component of deliberate indifference.

### B.    Subjective Component: Deliberate Disregard

Jackson objects to the Magistrate Judge's finding that Defendants did not deliberately disregard his medical needs.  The Magistrate Judge found that, even crediting Jackson's allegations that he did not "refuse" his medication on April 9 and was not a "no show" on April 23, Defendants' conduct was not a constitutional violation.  (R&R at 8-9.)  Jackson argues that the Magistrate Judge improperly evaluated his claim under the standard for "delay of medical treatment," and not under the standard for "knowing failure to administer prescribed medicine."  (Objs. at 2.)  Because the Court will find that no genuine issues of material fact remain as to whether Defendants were deliberately indifferent to Jackson's serious medical needs, the Court will overrule Jackson's objections and adopt the R&R.

The Magistrate Judge cited *Kennedy v. Kelley*, where another federal magistrate judge stated that "courts have held that occasionally missed medication doses do not rise to the level of a constitutional violation."  No. 16-363 JLH/PSH, 2016 WL 7480711, at *2 (E.D. Ark. Dec. 6, 2016) (collecting cases).  In *Kennedy*, the complaint was based on "a single day" that Plaintiff did not receive his psychiatric medication, and the magistrate judge found that Plaintiff had described "at most negligence."  *Id.*  The magistrate judge recommended dismissal of the complaint for failure to state a claim upon which relief could be granted.  *Id.*  The district court adopted the R&R without comment.  *Kennedy v. Kelley*, No. 5:16CV00363 JLH, 2016 WL 7477761, at *1 (E.D. Ark. Dec. 29, 2016).

While the facts of *Kennedy* appear similar to the present case, the Court is not bound by decisions of other district courts.  Thus, the Court looks to the Eighth Circuit case cited within *Kennedy* for guidance.  In *Ervin v. Busby*, the Eighth Circuit held that a one-month delay in providing Ervin, a pretrial detainee, with his prescribed antidepressant medication was insufficient to support a finding of deliberate indifference, even though Ervin complained of consequences from "the sudden withdrawal of the medication."  992 F.2d 147, 150-51 (8th Cir. 1993).[5]  The Eighth Circuit upheld the district court's dismissal of Ervin's case.  *Id.*

---

[5] Because Ervin was a pretrial detainee, the Eighth Circuit analyzed his claim under the Due Process Clause of the Fourteenth Amendment rather than under the Eighth Amendment. *Ervin*, 992 F.2d at 150.  However, the court noted that "[a]lthough this court has suggested that a more stringent standard than deliberate indifference would be appropriate in assessing pretrial detainees' claims of inadequate medical care, no standard has been clearly established." *Id.* Thus the Eighth Circuit ultimately applied the same deliberate indifference standard that the Court applies in this Eighth Amendment case. *See id.*

In the present case, even taking Jackson's allegations as true, he was denied his antidepressant medication for only one day, albeit on two occasions two weeks apart. In light of *Ervin*, the Court cannot say that Defendants were deliberately indifferent to Jackson's serious medical needs.

Jackson cites several cases in support of his objection. In *Dadd v. Anoka County*, the Eighth Circuit affirmed denial of a motion to dismiss based on qualified immunity, finding that jail staff acted with deliberate indifference to a pretrial detainee's need for pain medication. 827 F.3d 749, 753, 757 (8th Cir. 2016). The court recognized that two-days' delay of pain treatment may be the basis of a constitutional claim. *Id.* at 756. While this case would seem to support Jackson's view, it is distinguishable. Dadd repeatedly asked jail staff for pain medication to relieve his severe pain resulting from a dental surgery, and the staff repeatedly refused. First, Dadd informed staff of his pain upon admission to the jail, but staff did not make arrangements for him to get his prescribed medication. *Id.* at 753. He then complained to three other deputies, who ignored him. *Id.* The next morning, after suffering through the night, Dadd informed a nurse of his pain, but the nurse refused to give him his prescribed medication or any other medication. *Id.* at 753. When he was unable to eat, he complained to another deputy, who did not respond. *Id.* at 754. Later that day, the jail doctor directed a nurse to give Dadd ibuprofen, but the nurse did not do so. *Id.* After another night unable to sleep and another morning unable to eat, Dadd still received no pain medication. *Id.* He finally got relief after nearly 48 hours when the jail staff returned his prescribed pain medication to him as he left the jail, telling him that jail was not supposed to be comfortable. *Id.*

The present case is distinguishable for two reasons.   First, Dadd suffered for almost 48 hours, while Jackson alleges that he suffered for one night.   Second, the defendants in Dadd knew that he was suffering and ignored him, while Defendants in the present case did not know that Jackson would suffer.   "'Deliberate indifference' entails a level of culpability equal to the criminal law definition of recklessness, that is, a prison official 'must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'"   *Bender v. Regier*, 385 F.3d 1133, 1137 (8th Cir. 2004) (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)).   Dadd notified numerous members of the jail staff of his pain but was ignored.   *See Dadd,* 827 F.3d at 753-54.   The court noted that "the deputies' decisions to ignore Dadd's complaints were not based on 'a medical judgment,' but rather indifference."   *Id*. at 756.   Jackson alleges that he asked for his Zoloft before and after his visitation, but he does not allege that he notified anyone of the symptoms he experienced on the night of April 23.   He also does not allege that he suffered any symptoms after not receiving his Zoloft on April 9.   Defendants had no reason to "be aware of facts" suggesting that "a substantial risk of serious harm" existed.   *See Bender*, 385 F.3d at 1137.   Paulson states that withdrawal symptoms do not usually occur so quickly after a missed dosage of Zoloft due to its slow onset of action and long half-life, (Paulson Aff. ¶¶ 12-13.)[6]; thus, Defendants did not know that Jackson would suffer any harm.

---

[6] Jackson objects to the Magistrate Judge's acceptance of Paulson's opinion that he suffered no injury as a result of the missed dosage, arguing that Paulson is not a psychiatrist and "cannot make a factual determination" as to how Jackson was affected by the missed dosage

*Jenkins v. County of Hennepin, Minnesota* provides a helpful comparison.   In

*Jenkins*, the Eighth Circuit found that a medical supervisor's decision to "briefly

postpone an X-ray (ultimately for less than twenty-four hours) reflect[ed] a medical

judgment that Jenkin's injury, though possibly serious, was not urgent."  557 F.3d 628,

632 (8th Cir. 2009).  The court noted that Jenkins could not show that the one-day delay

was detrimental to his recovery and that, even if better medical practice would have been

to expedite treatment, the supervisor's failure to do so was at most negligent.  *Id.*

Likewise, Defendants' refusal to change prescription delivery times on short notice

reflects a medical judgment supported by their understanding that one missed dose of

Zoloft would not lead to withdrawal symptoms.  Furthermore, as Jackson did not report

any symptoms to medical staff when they occurred, Defendants cannot be said to have

---

because he "based his determinations on inaccurate/falsified medical records and never
personally or otherwise examined [Jackson]."  (Objs. at 2.)  Whether Jackson was in fact injured
by Defendants' conduct is irrelevant if the injury was not caused by deliberate indifference.  *See
Jolly v. Badgett*, 144 F.3d 573, 573 (8th Cir. 1998) (defendants not deliberately indifferent despite
plaintiff suffering seizure because there was no evidence that defendants knew that two-hour
delay in taking seizure medicine would have adverse effect on plaintiff).  Thus, the Court need
not credit Paulson's opinion as to Jackson's suffering.

    The Court considers Paulson's opinions regarding Zoloft and the onset of withdrawal
symptoms to the extent that they are relevant to the subjective component of deliberate
indifference.  Paulson's opinions suggest that, like the defendants in *Jolly*, Defendants in the
present case did not know that Jackson was likely to suffer adverse effects as a result of one
missed dosage of Zoloft.  The Court need not accept Paulson's opinions as to Zoloft or as to
Jackson's suffering as factually true; however, the Court considers them to the extent that they
show what Defendants knew about the risks of not distributing Jackson's Zoloft.  But even if the
Court chose not to consider Paulson's opinions in analyzing the subjective component of
deliberate indifference, the facts Jackson alleges do not show that Defendants knew that missing
one dose of Zoloft would harm Jackson.   Jackson does not allege that he suffered symptoms
after the missed dose on April 9 and does not allege that he notified any medical staff of any
withdrawal symptoms at any time.  (*See generally* Am. Compl.)  The outcome of this case does
not depend on Paulson's affidavit, thus the Court will therefore overrule Jackson's objection.

known of Jackson's suffering and cannot be said to have been deliberately indifferent to it.  At most they were negligent, which is insufficient to support a § 1983 claim for deliberate indifference.  *Ervin*, 992 F.2d at 151.

Jackson also cites *Phillips v. Jasper County Jail*, where the Eighth Circuit found that there was a genuine dispute of material fact as to whether jail employees were deliberately indifferent to Phillips's serious medical needs.  437 F.3d 791, 796 (8th Cir. 2006).  Phillips testified that he had not been administered his prescribed seizure medication and had not been assigned to a bottom bunk as he requested.  *Id.*  The facts when viewed in the light most favorable to Phillips supported a reasonable inference that he had a seizure, which caused him to fall from his top bunk, resulting in severe head, neck, and spine injuries.  *Id.* at 793, 796.  *Phillips* is distinguishable because the serious risks involved in not administering seizure medication and putting someone with a seizure disorder on a top bunk were arguably known to the jail employees.  *See id.*  There is no evidence in the present case that Defendants were aware of a comparable "risk of serious harm" to Jackson.  *See Bender*, 385 F.3d at 1137.

Jackson cites *Johnson v. Hay*, where a similar analysis applies.  931 F.2d 456, 463 (8th Cir. 1991).  In *Hay*, a pharmacist refused to refill an inmate's prescriptions for two seizure medications, and the inmate suffered two seizures.  *Id.* at 458.  The Eighth Circuit found that genuine issues of fact existed as to whether the pharmacist acted with deliberate indifference to the inmate's medical needs by substituting his own judgment for that of the inmate's doctors, precluding summary judgment.  *Id.*  *Hay*, like *Phillips*, is distinguishable.  First, the risks involved in not administering seizure medication are

more serious and more obvious.   Second, *Hay* involved more missed dosages over a longer period of time.   Third, *Hay* involved outright refusal of the pharmacist to abide by a prescribing doctor's treatment plan, not missed doses due to scheduling.

Jackson cites other decisions that are less helpful to his case.   In *Ellis v. Butler*, an inmate received delayed treatment for a knee injury.   890 F.2d 1001, 1002 (8th Cir. 1989). The Eighth Circuit reversed and remanded a district court's dismissal of the action for failure to state a claim.   *Id.*   But a motion to dismiss for failure to state a claim is easier to defeat, because it requires a court to find that "it appears beyond doubt that [the plaintiff] can prove no set of facts in support of his claim[s] which would entitle him to relief."   *Id.* at 1003 (quoting *Conley v. Gibson*, 355 U.S. 41, 45-56 (1957)).   The *Ellis* court found that dismissal was not appropriate, but suggested that the action might be "suitable for resolution on motions for summary judgment."   *Id.* at 1004.   Since *Ellis* was decided on a more lenient standard, it provides little support for Jackson's objections.

Jackson's citation of *Jolly v. Badgett* actually harms his case.   Jackson points to the dissenting opinion, where the judge opined that the evidence "was sufficient to create a triable issue as to whether these defendants' interference with Jolly's prescribed dosage schedule interfered with a serious medical need."   144 F.3d 573, 574 (8th Cir. 1998) (Arnold, J., dissenting in relevant part).   Dissenting opinions are not binding, and the majority in *Jolly* found that there was no evidence that defendants knew that the alleged delay in Jolly's taking his seizure medicine "would have any adverse effect."   *Id*. at 573 (majority opinion).   Likewise, there is no evidence in the present case that Defendants knew that the delay in administering Jackson's medication would have any adverse

effect, let alone risk serious harm.  Even under the dissenting opinion's logic, Jackson's argument would fail as the risks involved in not administering seizure medication are known and much more serious.

Jackson cites *Aswegan v. Bruhl*, where the Eighth Circuit affirmed a district court's denial of a motion for judgment notwithstanding the verdict, finding that sufficient evidence supported a jury finding of deliberate indifference.  965 F.2d 676, 678 (8th Cir. 1992).  The facts of *Aswegan* certainly rose beyond mere negligence.  Aswegan faced a number of medical conditions, including coronary artery disease, with history of a heart attack, chronic obstructive pulmonary disease, and arthritis.  *Id.* at 677.  There was evidence that defendants had:

> deliberately violated prison policy by refusing Aswegan access to medical personnel . . . . and fail[ing] to take steps to eliminate repeated violations of orders that Aswegan's medications be delivered in a timely manner; that Aswegan not be cuffed with his hands behind his back, because of arthritis; and that he not be placed in shower stalls during 'shake-downs' of his cell, because the humidity made it difficult for him to breathe.

*Id.* at 677-78.  There was also evidence that defendants refused to administer antibiotics prescribed by a specialist.  *Id.*  The facts in *Aswegan* demonstrated repeated instances of intentional deprivation of prescribed medical care that carried with it serious risk of harm. The facts in the present case simply do not rise to the same level.

Finally, Jackson cites *Cummings v. Roberts*, where the Eighth Circuit found that the district court erred in granting summary judgment on a claim of deliberate indifference.  628 F.2d 1065, 1068 (8th Cir. 1980).  Cummings alleged:

> On January 13, 1979, defendant Donald Hill slammed
> Cummings between two cell doors, causing Cummings to
> sustain a severe back injury.  Cummings received no medical
> care until January 16, 1979, notwithstanding the fact that he
> was suffering extreme pain from the injury.  Although his
> back injury was serious enough to require hospital care,
> Cummings was not admitted to the hospital but instead was
> returned to the jail and placed in [administrative segregation].
> The superintendent and the director of security then failed to
> give the medical care ordered by Cummings' doctors.

*Id*. at 1066.  Like *Aswegan*, the facts of *Cummings* rise well beyond mere negligence.
The mistreatment alleged by Jackson does not.

Jackson correctly notes that knowing failure to administer prescribed medication
or intentional interference with prescribed treatment **may** constitute deliberate
indifference in the Eighth Circuit.  *See Hay*, 931 F.2d at 463; *see also Phillips*, 437 F. 3d
at 796.  However, in this case it does not.  The facts as taken in the light most favorable
to Jackson would not demonstrate that Defendants were deliberately indifferent to his
serious medical needs, because they did not knowingly disregard a serious risk of harm to
Jackson.  Defendants are therefore entitled to judgment as a matter of law and their
motion for summary judgment will be granted.

### C.     Supervisory Liability

Jackson also objects to the R&R because it does not address his allegation that
nurses under Reid's supervision had a custom, policy, or practice of failing to administer
prescribed medication to inmates attending visits.  (Objs. at 3.)  He cites *Hartsfield v.
Colburn*, where the court declined to reach the question whether the jail's custom, policy,

or practice contributed to deliberate indifference.  371 F.3d 454, 458 (8th Cir. 2004).  For

§ 1983 claims, supervisors are personally liable for their subordinates if supervisors:

> 1) Received notice of a pattern of unconstitutional acts
>    committed by subordinates;
> 2) Demonstrated deliberate indifference to or tacit authorization
>    of the offensive acts;
> 3) Failed to take sufficient remedial action; and
> 4) That such failure proximately caused injury to [plaintiff].

*Jane Doe A ex rel. Jane Doe B v. Special Sch. Dist. of St. Louis Cty.*, 901 F.2d 642, 645

(8th Cir. 1990); *see also Wilson v. City of North Little Rock*, 801 F.2d 316, 322 (8th Cir.

1986).  Because the Court finds no constitutional violation by Powers-Johnson or any of

Reid's other subordinates, the Court declines to find Reid liable as supervisor.

## III.   QUALIFIED IMMUNITY

Jackson also objects to the Magistrate Judge's finding that Reid and Powers-

Johnson are entitled to qualified immunity on the grounds that it was clearly established

at the time of the alleged violations that "the knowing failure to administer prescribed

medication can itself constitute deliberate indifference" under *Dadd*, 827 F.3d at 757, and

that a "'custom, policy, or practice [that] contributed to the alleged deliberate

indifference' can evince an Eighth Amendment violation for purposes of supervisory

liability" under *Hartsfield*, 371 F.3d at 458.  (Objs. at 3.)

To defeat qualified immunity, Jackson must allege facts that demonstrate two

things:  (1) that a government official violated his constitutional right, and (2) that the

right was "clearly established."  *Saucier v. Katz*, 533 U.S. 194, 201 (2001).  The first

requirement was discussed above, and the Court finds no violation of Jackson's

constitutional right.  The qualified immunity inquiry should end here.  But even if Jackson had shown that his constitutional right was violated, he has failed to show that such a right was "clearly established," which requires "[t]he contours of the right [to] be sufficiently clear that a reasonable official would understand that what he is doing violates that right."  *Id*. at 202 (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)) (internal quotation marks omitted).

Jackson is correct that failure to administer prescribed medication **may** constitute deliberate indifference, but the Eighth Circuit has never held that facts similar to Jackson's allegations constituted deliberate indifference.  On the contrary, in *Ervin*, the Eighth Circuit held that a delay of one month in providing a pretrial detainee with his prescribed antidepressant medication was insufficient to support a finding of deliberate indifference.  992 F.2d at 150-51.  If the Eighth Circuit has previously held that a significantly longer delay in administering a pretrial detainee's antidepressant did not constitute deliberate indifference, then no reasonable official would understand that a mere 24-hour delay in administering an inmate's antidepressant would constitute a constitutional violation.  Even if Defendants' conduct violated Jackson's constitutional right, such a right was not clearly established.  Thus the Court will overrule Jackson's objections as to Defendants' entitlement to qualified immunity and adopts the R&R.

## CONCLUSION

Taking the facts in the light most favorable to Jackson, Defendants' conduct in delaying 24 hours in providing Jackson with Zoloft for treatment of his depressive and

anxiety disorders on two occasions does not constitute deliberate indifference. Furthermore, even if Defendants' conduct constituted a violation of Jackson's constitutional rights, such a right was not clearly established.  There remains no genuine dispute of material fact, and Defendants are entitled to judgment as a matter of law.  The Court will therefore overrule Jackson's objections in full, adopt the Magistrate Judge's R&R in full, and grant Defendants' Motion for Summary Judgment.

## ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1.      Plaintiff's Objections to the Report and Recommendation [Docket No. 72] are **OVERRULED** and the Magistrate Judge's Report and Recommendation [Docket No. 71] is **ADOPTED**.

2.      Defendants' Motion for Summary Judgment [Docket No. 34] is **GRANTED** as to Defendants Reid and Powers-Johnson, and Plaintiff's request to dismiss his claims against Defendant Roy [Docket No. 58] is **GRANTED**.

3.      Plaintiff's action is **DISMISSED WITH PREJUDICE**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**


DATED:  January 25, 2018                    _____
at Minneapolis, Minnesota.                         JOHN R. TUNHEIM
                                                            Chief Judge
                                              United States District Court